UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT PELUSI<br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD<br>PASSENGER CORPORATION<br>Defendant. | CIVIL ACTION NO. 04 12236 RGS |

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

I.   **INTRODUCTION**

Plaintiff Robert Pelusi ("Plaintiff") brings a claim seeking damages for personal injury under the Federal Employer's Liability Act ("FELA"). He alleges that he suffered a heart attack while working as a red cap baggage handler due to the negligence of his employer, the defendant National Railroad Passenger Corporation ("Amtrak") which failed to provide him a safe workplace. Plaintiff had returned to work from a medical leave of absence in September 2000, more than one year prior to the incident that is the subject of this litigation, with a note from his doctor indicating that he was capable of working without restriction. He never complained of heart problems or asked his supervisors for any accommodation for any ongoing heart condition he might have. Amtrak had no reason to foresee that he would have a heart attack. Furthermore, there is no competent evidence that Amtrak breached its duty of care by allegedly failing to provide him a safe workplace.

Plaintiff also alleges negligence and violation of FELA because of failure to comply with the Federal Safety Appliance and Boiler Inspection Acts. However, these statutes are completely inapplicable to Plaintiff's work as a red cap.

As a result, there is no evidence of negligence or violation of FELA and summary judgment should be granted to Amtrak.

## II.    FACTS[1]

Plaintiff was hired in March 1987 by Amtrak as an employee in the Commissary Department where he worked loading and unloading food products onto trains. Statement of Material Facts ("SMF") at ¶ 3. In April 1999, Plaintiff transferred to a position as a baggage handler in the Baggage Department where his responsibilities consisted of loading and unloading mail, packages, and bags of various kinds onto trains. SMF at ¶ 4. Over the next several years, Plaintiff occasionally transferred his job assignment to work as a red cap, a position which assists passengers getting their bags on and off trains. SMF at ¶ 7. In all three jobs, Amtrak had a lifting restriction of 75 pounds. SMF at ¶¶ 3, 4, 5, 9. Plaintiff was provided training in lifting by the Commissary and Baggage Departments which indicated that he was not to lift more than allowed, and to share heavy loads with others. SMF at ¶¶ 3, 5. Plaintiff never complained about the red cap job, which he strongly preferred over his other positions at Amtrak. SMF at ¶¶ 8, 41. Furthermore, he testified that neither he nor his fellow baggage men and red caps (many whose age was in the forties or fifties like Plaintiff who was 55 when the incident occurred) ever complained about any safety concerns regarding procedures, facilities or equipment. SMF at ¶¶ 6, 10, 42.

---

[1]    Amtrak refers the Court to the attached Statement of Material Facts which provides a more detailed description of the facts. Amtrak also states that the facts described herein and in the attached Statement of Material Facts are included in support of Amtrak's Motion for Summary Judgment in accordance with Fed.R.Civ.P. 56 and that Amtrak reserves its right to dispute some of these "facts" in the event this matter is not entirely resolved via this motion.

In April 2000, Plaintiff went to the hospital due to chest pains. SMF at ¶ 18. After undergoing tests, he was determined to suffer from severe blockage of one of his arteries. *Id.* As a result, he underwent surgery and a stent was implanted in his heart. *Id.* He subsequently underwent physical therapy and remained out of work for several months. SMF at ¶ 19. On August 29, 2000, his cardiologist wrote that Plaintiff was "cleared to return to work full time on Friday, September 1, 2000 *with no restrictions*." [emphasis added]. SMF at ¶ 20.

Plaintiff returned to work as a redcap and baggage man in September 2000. SMF at ¶ 21. He worked for the next 14 months without any difficulties associated with his heart until midnight November 2, 2001. *Id.* At that time he was awakened by severe chest pains that he rated a 6 on a scale of 1 to 10, with 10 being the highest degree of pain. SMF at ¶ 24. The pain persisted all night and he was unable to return to sleep. *Id.* Nonetheless, the following morning, Plaintiff went to work as a red cap at South Station in Boston, MA. SMF at ¶ 26.

While at work, at approximately 9:15 a.m. on November 3, 2001, Plaintiff claims a passenger sought his help in getting his bags to a train that was leaving shortly. SMF at ¶ 27. Plaintiff alleges that he placed the bags, each of which weighed more than 100 pounds, onto a cart and hurried to the platform with the passenger, barely making it in time. SMF at ¶¶ 27, 28. Amtrak has a general policy against running while on duty. SMF at ¶ 14. Plaintiff then lifted both bags onto the train. SMF at ¶ 27.

Plaintiff then began sweating profusely, sat down inside the station in an office behind the information booth and developed severe chest pain. SMF at ¶ 29. Shortly thereafter he was taken by ambulance to Mass. General Hospital. *Id.* Plaintiff was diagnosed as having a heart attack and surgery was performed that day to open up blockages in the right side of his heart. SMF at ¶ 30.

3

In January 2002, Plaintiff's cardiologist indicated that Plaintiff should be restricted to lifting no more than 25 pounds, and, although he could do light sedentary work, he could never go back to his position as a red cap. SMF at ¶¶ 33, 34, 37.

Plaintiff applied for and was awarded a full Railroad Retirement disability due to his heart attack. SMF at ¶ 35. He has not returned to work at Amtrak or sought work anywhere else since November 3, 2001. SMF at ¶ 36.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be rendered if the evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Motions for summary judgment are intended "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial," Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986), and "whether it is so one-sided that one party must, as a matter of law, prevail over the other." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991); Garside at 48. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." See Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996) (citations omitted).

Summary judgment has been granted in this jurisdiction to dispose of deficient claims for liability pursuant to the Federal Employers' Liability Act. E.g. Moody v. Boston and Maine Corporation, 1990 WL 8115, at *1 (D.Mass. Jan. 23, 1990), *aff'd* 921 F.2d 1 (1st. Cir. 1990);

4

Robert v. Consolidated Rail Corp., 832 F.2d 3, 5-7 (1st. Cir. 1987); Tobin v. National R. R. Passenger Corp., 677 F. Supp. 674, 675 (D.Mass. 1988); Thomas v. Consolidated Rail Corp., 971 F. Supp. 620, 620-21 (D.Mass. 1997).

## IV.   PLAINTIFF CANNOT PROVE AMTRAK IS LIABLE PURSUANT TO FELA

Amtrak cannot be subject to liability pursuant to the Federal Employers Liability Act ("FELA") given Plaintiff's inability to prove the requisite elements of a claim of negligence. FELA was promulgated by Congress in 1906 to "provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." Robert v. Consolidated Rail Corporation, 832 F.2d 3, 5-6 (1st. Cir. 1987). The Act provides that:

> [e]very common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boars, wharves, or other equipment."

45 U.S.C. § 51 (2006).

"Recovery under FELA is allowed if the employer's negligence played 'any part, even the slightest, in producing the injury or death for which damages are sought.'" Moody v. Boston and Maine Corporation, 1990 WL 8115, at *1 (D.Mass. Han. 23, 1990). Nevertheless, "FELA does not impose strict liability on employers." Robert, supra at 6. The defendant is not obligated to eliminate all risks in the workplace; it is only obligated to eliminate unreasonable risks." Tobin v. National R.R. Passenger Corp., 677 F.Supp. 674, 674 (D.Mass. 1988).

Consequently, a plaintiff asserting a cause of action based upon the Act must satisfy all of the "traditional common law elements of negligence – foreseeability, duty,

5

breach, causation, and damages." Stevens v. Bangor and Aroostook R. Co., 97 F.3d 594, 598 (1st. Cir. 1996). Plaintiff, however, cannot prove negligence because he cannot satisfy at least the following two elements: (A) foreseeability - Amtrak did not know, nor should it have reasonably known, that Plaintiff would suffer a heart attack as a result of his position as a red cap and therefore could not reasonably have foreseen such a result; and (B) duty - there is no evidence that Amtrak breached its duty by failing to provide Plaintiff a reasonably safe work place. Thomas v. Consolidated Rail Corp., 971 F. Supp. 620, 621-622 (D.Mass. 1997).

### A.   Plaintiff's Heart Attack Was Not Reasonably Foreseeable

Amtrak cannot be found liable under FELA because it did not know, nor should it have reasonably known, that Plaintiff's health could be jeopardized as a result of his position as a red cap. According to the Supreme Court, "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." Moody, 1990 WL 8115 at *1 (*quoting* Harrison v. Missouri Pac. R.R. Co., 372 U.S. 248, 249 (1963)) (internal quotations omitted); Armstrong v. Kansas City S. Ry. Co., 752 F.2d 1110 (5th Cir. 1985) (FELA plaintiff must show that the railroad "with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury."). "In FELA actions, reasonable foreseeability requires proof of actual or constructive notice to the employer of the defective condition that caused the injury." Hairston v. Long Island R. Co., 2003 WL 21254196, at *5 (S.D.N.Y. May 30, 2003).

If the employee can show that he informed his employer of his condition and yet the employer did nothing to remedy the situation, the employer will be deemed negligent and liable under FELA. Robert v. Consolidated Rail Corp., 832 F.2d 3, 6 (1st. Cir. 1987). However, if the employee fails to inform the employer of his condition or, alternatively, the employee indicates

to the employer that he is able to work without any restrictions, the employer has no reason to know that the employee cannot fully perform the functions of his job assignment, and the employer will not be held liable under FELA. See Moody, 1990 WL 8115 at *1.

The record in this civil action shows that Plaintiff had been cleared by his doctor fourteen months prior to this incident to return to work full time *without any restrictions*. SMF ¶20. Plaintiff admitted that he had no difficulties whatsoever with his heart from the date of his return until the day of the incident and that he did not mention any problems until he was experiencing the heart attack around 9:15 a.m. SMF ¶¶ 21, 22, 25. In addition, he has presented no evidence that, during the 14 months prior to the incident, he sought special accommodation from Amtrak for his work as a baggage man or red cap, or that he sought any other work at Amtrak or anywhere else because of his heart condition. As a result, Amtrak did not know, nor would it have had reason to know, that Plaintiff's performance of his red cap duties that he had previously performed without any difficulty would cause him to experience a heart attack. See Robert v. Consolidated Rail Corp., 832 F.2d 3, 5 (1st. Cir. 1987) (summary judgment granted because employee failed to show that employer knew or should have known that the harassment he was subjected to in the workplace would cause the employee to suffer a heart attack) ; Moody v. Boston and Maine Corporation, 1990 WL 8115, at *1 (D.Mass. Jan. 23, 1990) (summary judgment granted in favor of employer on basis that employee who died of heart attack had not informed his employer of his physical condition, and that his casual statements to co-worker regarding his condition were not sufficient to put the employer on notice); Schaefer v. Union Pacific Railroad Co., 182 F.3d 933 (10th Cir. 1999) (summary judgment granted when FELA plaintiff, who claimed general unsafe working conditions and equipment which caused arthritis

during the course of employment, failed to show specific facts indicating that the railroad would have known that he was at risk for developing the injury he experienced).

**B.     Amtrak Did Not Breach Its Duty To Provide A Safe Workplace**

"FELA imposes on a railroad a duty to provide its employees a reasonably safe place to work." Thomas v. Consolidated Rail Corp., 971 F. Supp. 620, 621 (D.Mass. 1997). Amtrak is not in violation of this stricture of FELA and is not negligent because it did not breach its duty to provide a safe workplace by either providing defective or insufficient equipment or facilities, or by failing to create or enforce reasonable safety practices.

1.  AMTRAK DID NOT PROVIDE DEFECTIVE OR INSUFFICIENT EQUIPMENT OR FACILITIES

The FELA statute holds employers liable for failure to provide a safe workplace for an employee's "injury or death resulting in whole or in part . . . by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boars, wharves, or other equipment." 45 U.S.C. § 51 (2006). Yet Plaintiff has presented no evidence of any such defects or insufficiencies that contributed to or caused his heart attack.

Furthermore, an "employer is not held to an absolute responsibility for the reasonably safe condition of the place, tools, and appliances, but only to the duty of exercising reasonable care to that end." Baltimore & O.S.W.R. Co. v. Carroll, 280 U.S. 491, 495 (1930). "The phrase 'reasonably safe place to work' . . . does not mean the absolute elimination of all dangers, but the elimination of those dangers which could be removed by the exercise of reasonable care on the part of the employer." Raudenbush v. Baltimore & O.R. Co., 160 F.2d 363, 367 (3rd Cir. 1947). Thus, even if the Plaintiff asserted that there had been a deficiency in the facility or equipment provided by Amtrak, a mere deficiency in such would not be sufficient by itself to impose FELA liability.

2. AMTRAK DID NOT FAIL TO CREATE OR ENFORCE REASONABLE SAFETY POLICIES

"Under FELA, the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task." McKennon v. CSX Transportation, Inc., 897 F.Supp. 1024, 1027 (M.D.Tenn. 1995). Evidence that the conduct of the defendant was unreasonable is a necessary element of a claim that the duty of care was breached. Thomas, *supra*, at 622.

Plaintiff argues in his answers to interrogatories and his deposition that Amtrak breached its duty to provide a safe workplace by failing to: (1) create a new policy which would require passengers to go to the Baggage Department to weigh their bags, and send them through that department if they were overweight; (2) provide more red cap personnel so that two red caps could share the load of lifting or carrying heavy bags; and (3) enforce the policy that a red cap should not lift or carry any bags that weigh more than 75 pounds. SMF ¶40. Essentially these three allegations boil down to a desperate and unavailing argument that Amtrak is somehow at fault because Plaintiff lifted two bags that substantially exceeded the 75 pound weight limit.

(a) Amtrak Is Not Negligent for Not Requiring Luggage Weigh-Ins

Amtrak is under no obligation to create a new procedure regarding luggage check-in that will increase costs for the carriers and passengers, and create further delays for passengers. If there was no other way to safely place luggage on a train, this argument might be more persuasive. However, for many years, Amtrak has used red caps and carts to safely provide this service.

Plaintiff has produced no evidence that red caps suffer an undue number of injuries because they occasionally lift overweight bags onto trains. In fact, he has offered no evidence that anyone other than himself has suffered an injury supposedly as the result of doing so.

9

"Absent evidentiary proof, mere allegations are insufficient to defeat defendant's motion for summary judgment." <u>Williams v. Burlington Northern and Santa Fe Railway Co.</u>, 13 F.Supp.2d 1125, 1129 (D.Kan. 1998).

Significantly, Plaintiff admits that he and his fellow red caps have never complained about this alleged inadequacy to his supervisors or to the safety committee. SMF ¶¶41, 42.

This theory of liability is similar to that put forth by the plaintiff in <u>Williams</u>, *supra*, wherein it was alleged that the employer failed to develop policies, procedures, and training to prevent carpal tunnel syndrome, despite the employer's knowledge of this medical condition. 13 F.Supp. 2nd at 1129. This theory was rejected by the court partly for the plaintiff's failure to have complained to his employer about this, and partly for lack of evidence that the employer knew that tools he was using were unsafe. For the same reasons, this Court should reject this claim in which Plaintiff and his colleagues never informed Amtrak of concerns about the absence of such a policy and there is no evidence of any injuries to red caps due to the failure to implement such a policy.

Consequently, Plaintiff has failed to meet his burden of showing Amtrak was negligent by failing to institute such a procedure at train stations.

(b)   <u>Amtrak Was Not Negligent by Failing to Provide More Red Caps</u>

Amtrak did not breach its duty to provide a safe workplace by failing to schedule more red cap personnel for each shift so that two red caps could share the load of lifting or carrying heavy bags. Plaintiff admits that five or six other red caps worked on the same shift in the same location as him. SMF ¶11. In addition, he has offered no evidence to show that the number of red caps was inadequate to service the public or that this number prevented red caps from

occasionally assisting each other as circumstances may require. Again, mere allegations are simply not enough to defeat a motion for summary judgment. Williams, *supra* at 1129.

Moreover, Amtrak has addressed this scenario by establishing policies, including the job description itself with which Plaintiff admits he was familiar, that preclude red caps from lifting more than 75 pounds by themselves. SMF ¶¶ 9, 15, 16, 17. Plaintiff admits that he was able to fairly accurately assess the weight of bags. SMF ¶ 15. He also admits that he was told to lift heavy loads in conjunction with another person. SMF ¶¶ 5, 9. If Plaintiff felt that the bags were too heavy when he began to put them on his cart, he could have sought assistance from a colleague. There is no testimony that no one was available. In addition, he could have asked the customer to assist him. Finally, he could have told the customer that the bags were too heavy and sent him to the Baggage Department. Hence, he had a variety of options, other than the unnecessarily expensive one of having more red caps, to accomplish his objective of getting the customer's luggage on the train.

This case has similarities to McKennon, *supra*, in which the plaintiff alleged that his injury could have been prevented if more men had been assigned to the job. 897 F.Supp. at 1027. As with Mr. Pelusi in the instant case, the plaintiff and his fellow workers in McKennon never complained about the alleged inadequate number of workers. SMF ¶¶ 41, 42; McKennon at 1027. Also the fact that his job might have been easier with additional personnel does not prove an unreasonably safe workplace or negligence. Id. Again, similar to Mr. Pelusi, the plaintiff and his colleagues in McKennon had performed this work for a long time without injury. Id. Under these circumstances, the court found no breach of duty even though a supervisor had rejected the suggestion of one of the workers that the work be performed with a machine, in which event the plaintiff would not have been injured. Id. In contrast, there is no

claim by Mr. Pelusi that he suggested a safer alternative method of lifting the bags on that or any other day, but was rejected by management. SMF ¶41. Hence, there are even more compelling reasons to find no breach of duty in the instant case.

(c) Amtrak Did Not Breach Its Duty by Failing to Enforce the Policy that Red Caps Should Not Lift Bags Weighing More than 75 Pounds

Plaintiff alleges that he lifted two bags on November 3, 2001 that he knew to be substantially overweight because Amtrak's supervisors expected him to do whatever was necessary to prevent passengers from catching their trains. SMF ¶40. This self-serving allegation, without any corroborating evidence, simply does not rise to the level of competency necessary to raise a genuine disputed issue of material fact.

First, Plaintiff admits disregarding Amtrak's written policy, the job description for red caps with which he was familiar, and the training he had received about sharing the load of overweight bags with another person. SMF ¶¶ 9, 14-17, 27, 40. These policies were well established. SMF ¶¶ 5, 12-17. Plaintiff's disregard of them does not make Amtrak negligent.

Second, he offers no documents in support of this allegation and no specifics as to any oral directive from a supervisor to disregard the lifting policy, e.g. what was specifically said, by whom, to whom, when, and where. Moreover, he offers no corroboration from his red cap colleagues on this point. Remarkably, he admits that he and his fellow red caps never complained to a supervisor or the safety committee about being instructed to violate the lifting policies. SMF ¶¶ 41,42. Again, the absence of any evidence that Amtrak's conduct was unreasonable prevents a finding of breach of duty. Thomas, *supra* at 622. Holding Amtrak liable in such circumstances would amount to making it strictly liable for his alleged injury, something which FELA does not permit. Williams v. National Railroad Passenger Corp., 1997 WL 754175 (N.D.Ill.) at *5.

Third, even if a supervisor did instruct him to find a way to ensure his passengers catch their trains, which Amtrak denies, Plaintiff does not show why he could not have asked the passenger to help him put the bags on the train.[2] In addition, he does not show why he could not have asked the conductor who told him to put the bags on the floor of the train's vestibule, for assistance. Hence, even if he could prove that he was told to ensure the passenger got on the train, Plaintiff has provided no evidence that Amtrak compelled him to lift these particular overweight bags by himself. He had various options for solving the problem. Amtrak cannot be held liable because he made a poor judgment call.

In conclusion, Plaintiff has offered no evidence that Amtrak could reasonably have foreseen his injury or that Amtrak breached its duty to provide a safe workplace. As a result, there can be no finding of negligence and no FELA violation.

## V. PLAINTIFF CANNOT STATE A CLAIM PURSUANT TO THE BOILER INSPECTION ACT[3]

Plaintiff cannot assert a claim predicated upon the Boiler Inspection Act as Plaintiff does not and cannot assert that the train to which Plaintiff was carrying baggage at the time of the alleged incident was not functioning properly. The Boiler Inspection Act permits a railroad carrier to use a "locomotive or tender and its parts and appurtenances" so long as such locomotive and its parts "are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701 (2006). Liability under the Act is therefore imposed when a railroad carrier is determined to have used or allowed to be used a locomotive or part attached thereto that is defective and is therefore unsafe or creates a safety hazard. McGrath v.

---

[2] After all, it was the passenger's fault that they had to hurry to the train and that the bags were overweight in violation of published Amtrak travel policies.

[3] The Boiler Inspection Act was recodified in 1994, under the name Locomotive Inspection Act. *McGrath v. Consolidated Rail Corporation*, 136 F.3d 838, 840 n.1 (1st. Cir. 1998); 49 U.S.C. §§ 20701 *et seq.*

Consolidated Rail Corporation, 136 F.3d 838, 840 n.1 (1st. Cir. 1998) (stating that the plaintiff must show the existence of a defective part and proximate causation); Green v. River Terminal Railway Co., 763 F.2d 805, 810 (6th. Cir. 1985) (stating that liability is established upon "proof of an unsafe part and proximate cause"); see Richardson v. Missouri Pacific R. Co., 186 F.3d 1273, 1279 (10th. Cir. 1999).

A violation under the Act, however, does not create an independent cause of action. O'Laughlin v. National R.R. Passenger Corp., 928 F.2d 24, 26 n.3 (1st. Cir. 1991). Rather, a violation under the Act merely establishes the duty owed by the railroad carrier to the plaintiff. Jacobson v. New York, N.H. & H. R. Co., 206 F.2d 153, 155 (1st. Cir. 1953, *affd* 347 U.S. 909 (1954). Therefore, only upon a showing of a violation of the Act can a plaintiff maintain a cause of action pursuant to the Act. See id. Nowhere, however, has the Plaintiff alleged a violation of the Act. The Plaintiff's Complaint, deposition testimony, and Answers to Interrogatories are all devoid of such an allegation. As such, the Plaintiff cannot sustain a cause of action predicated upon the Boiler Inspection Act.

V. **PLAINTIFF CANNOT PUT FORTH A CLAIM BASED UPON THE SAFETY APPLIANCES ACT[4] AS THE PLAINTIFF HAS NOT ALLEGED A FAILURE OF ANY OF THE SPECIFIC DEVICES ENUMERATED IN THE ACT**

Plaintiff's Complaint states that the law suit was brought, at least in part, pursuant to the Safety Appliances Act ("SAA"), 49 U.S.C. §§ 20301 *et seq.*, which imposes liability derived from a failure to maintain the specific devices and equipment enumerated in the statute pursuant to the provisions thereof. "Under its terms, a railroad is liable for an employee's injury or death caused by a violation of the SAA." Finley v. National Railroad Passenger Corporation, 1997 WL 59322, at *5 (E.D.Pa. Feb. 12, 1997). The Act is violated when a railroad carrier uses, or

---

[4] The Safety Appliances Act was repealed in 1994 and transferred to 49 U.S.C. §§ 20301 et seq. Despite this repeal and transfer, the provisions of the Act remain substantively unchanged from their former version. *Finley v. National Railroad Passenger Corporation*, 1997 WL 59322, at *5 n.2 (E.D.Pa. Feb. 12, 1997).

allows the use of, a vehicle that is not equipped with specific safety devices listed in the statute. Finley, 1997 WL 59322 at *5; 49 U.S.C. § 20302 (2006). These safety devices include "couplers, sill steps, hand brakes, ladders, running boards, grab irons [and] hand holds." Finley, 1997 WL 59322 at *5.

Similar to the Boiler Inspection Act, the Safety Appliances Act does not create an independent cause of action. O'Laughlin v. National R.R. Passenger Corp., 928 F.2d 24, 26 n.3 (1st. Cir. 1991). Rather, a violation of the Act establishes "per se negligence for purposes of employer liability under FELA." Finley, supra, at *5. In order to assert a violation of the Safety Appliances Act, a plaintiff must allege that the defendant failed to maintain a specific piece of safety equipment listed in the statute. Id. (noting that "the Fourth and Eight Circuits have concluded that the SAA covers only those items specifically listed in the statute"). Absent such an assertion, a plaintiff will be unable to put forth a claim predicated upon the Safety Appliances Act. See id.

Neither Plaintiff's Complaint, nor his deposition testimony, nor his Answers to Interrogatories allege a violation of the Safety Appliances Act. Specifically, Plaintiff does not specify a particular piece of safety equipment, enumerated in the Act, which Amtrak failed to maintain. Furthermore, Plaintiff has not asserted that his alleged injury was caused by "defective and unsafe equipment." See Finley, supra, at *5. As such, Plaintiff cannot assert a cause of action under FELA based on a violation of the SSA.

### VII. CONCLUSION

For the reasons shown above and in the Statement of Undisputed Material Facts, Plaintiff cannot prove that Amtrak should have foreseen that he would have a heart attack on the job or that Amtrak breached its duty to provide a safe place to work. As a result, there can be no

15

finding of negligence and no violation of FELA. Furthermore, his allegations of negligence based upon violations of the Boiler Inspection and Safety Appliance Acts are completely frivolous and without basis. Consequently, summary judgment must be granted as a matter of law on this civil action.

                              DEFENDANT,
                              National Railroad Passenger Corporation,
                              by its attorneys,


DATED: March 15, 2006         s/Stephen E. Hughes
                              John A. Kiernan, BBO #271020
                              Stephen E. Hughes, BBO #629644
                              Bonner Kiernan Trebach & Crociata, LLP
                              One Liberty Square - 6th Floor
                              Boston, MA 02109
                              (617) 426-3900

## CERTIFICATE OF SERVICE

I, Stephen E. Hughes, hereby certify that, on March 15, 2006, I served a copy of the foregoing document by sending same by first class mail, postage prepaid, to counsel for each other party as follows:

Plaintiff's Counsel:
Thomas J. Joyce, III, Esq.
Hannon & Joyce
The Public Ledger Building – Suite 1000
150 S. Independence Square West
Philadelphia, PA 19106

Plaintiff's Local Counsel:
Michael J. McDevitt, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Ave., Suite 345
Boston, MA 02210

                              s/Stephen E. Hughes
                              Stephen E. Hughes