UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT PELUSI<br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD<br>PASSENGER CORPORATION<br>Defendant. | CIVIL ACTION NO. 04 12236 RGS |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Defendant, National Railroad Passenger Corporation ("Amtrak"), hereby states that for the purposes of its Motion for Summary Judgment, the following facts are not in dispute:[1]

**I.    THE PARTIES AND KEY PARTICIPANTS/WITNESSES**

1.  Amtrak is a passenger railroad established by an Act of Congress in 1970. 45 U.S.C. § 501 (1970).

2.  Plaintiff, Robert Pelusi ("Plaintiff"), is an individual formerly employed by Amtrak. Ex. 1 at 44.

**II.   PLAINTIFF'S WORK HISTORY AND TRAINING AT AMTRAK**

3.  Plaintiff was hired in March 1987 by Amtrak as an employee in the Commissary Department where he worked loading and unloading food products onto trains. He was not supposed to lift more than 75 pounds by himself. If something weighed more than 75 pounds he was instructed not to pick it up by himself, but to get help. Ex. 1, Plaintiff's

---

[1] Some of these "facts" are included herein only for the purposes of this motion, but may not be admitted by

deposition, dated November 30, 2005, at 45-46.

4. In April 1999, Plaintiff transferred to a position as a baggage handler in the Baggage Department. His responsibilities there consisted of loading and unloading mail, packages, and bags of various kinds onto trains. Again Plaintiff states that the lifting requirement was 75 pounds. Ex. 1 at 48-51.

5. Plaintiff was provided training in lifting by the Baggage Department. If a bag weighed more than 75 pounds Plaintiff and other baggage men were instructed not to pick it up alone, but to get help. Ex. 1 at 51-53; Ex. 2 Baggage Training Manual at 5-A-1 and 2.

6. Two of Plaintiff's baggage men colleagues were older than him and were 58 and 60 years of age. Many were in their forties. Most had twenty years of experience as baggage men. Ex. 1 at 54-55.

7. Over the next several years, Plaintiff occasionally transferred his job assignment to work as a red cap, an employee who assists passengers getting their bags on and off trains. Red caps generally place passengers' bags on their carts and wheel them to the train. Ex. 1 at 50-51; 56-57.

8. Plaintiff liked the red cap position, and much preferred it to his work for the Baggage and Commissary Departments. Ex. 1 at 56.

9. Amtrak's lifting requirements for red caps were the same as those for baggage men, and included a lifting restriction of 75 pounds. Ex. 1 at 50-51.

10. Many of Plaintiff's fellow red caps were between the ages of 35 and 45, with a few older, one of whom was older than Plaintiff. Ex. 1 at 55.

11. There were generally five or six other red caps working at the same time and in the same

---

Amtrak at trial. Amtrak reserves its rights to contest them should trial be necessary.

location as Plaintiff. Ex. 1 at 53.

12. Amtrak's highest priority is the safety of its passengers, employees, the public, and the operating environment. Ex. 3, Amtrak Standards of Excellence, page 5.

13. Plaintiff acknowledged receiving and reading the Standards of Excellence. Ex. 4, Plaintiff's signed acknowledgment.

14. Amtrak does not permit running as a manner of moving about equipment or facilities. Ex. 5, Safety Rules, at page 5.

15. Amtrak does not permit lifting heavy weights beyond one's physical limitations. Plaintiff claims he was able to accurately estimate the weight of bags he lifted. Ex. 5, Safety Rules at 12; Ex. 1 at 22-23.

16. Plaintiff was familiar with the job description for red caps. Ex. 1 at 26.

17. The job description for red caps in effect in November 2001 required the following, among other requirements:

   a. Assists customers with baggage from their vehicles to the baggage room/red cap stand or to trains and reverse.

   b. Loads and unloads and distributes bags to the public using the Red Cap Checks according to procedures.

   c. Heavy lifting, pulling and pushing in dusty, dimly lit, drafty, confined spaces.

   d. Required to lift baggage or packages up to 50 lbs, push/pull up to 75 lbs.

   e. Must be able to bend, stoop, lift and hand carry bags up to 75 lbs.

   f. Must carry and lift 50-75 lbs frequently.

   g. Must push and pull 75 lbs frequently.

   h. Meets standards established under Safety Rules.

     i.   Safety and Regulatory requirements: Lifting and Back safety, General Amtrak Safety

     j.   Knowledge: Safety guidelines & wheel chair handling.

Ex. 6, November 2000 Red Cap job description.

### III. PLAINTIFF'S PRIOR CARDIAC MEDICAL HISTORY

18. In April 2000, Plaintiff went to the hospital due to chest pains. After undergoing tests, he was determined to suffer from 90% stenosis (reduction) of one of his arteries. In May 2000 he underwent surgery and a stent was implanted in his heart. Ex. 1 at 13, 18; Ex. 7 Medical records: 4/00 through 7/00.

19. Plaintiff underwent physical therapy and remained out of work. Ex. 1 at 69.

20. On August 29, 2000, his cardiologist wrote that Plaintiff was "cleared to return to work full time on Friday, September 1, 2000 *with no restrictions.*" [emphasis added]. Ex. 8, Dr. Berg 8/29/00; Ex. 1 at 77.

21. Plaintiff returned to work as a redcap and baggage man in September 2000. He worked for the next 14 months without any difficulties with his heart. Ex. 1 at 18.

22. Moreover, during that time frame he never sought special accommodation from Amtrak for his work as a baggage man or red cap, and did not seek any other work at Amtrak or anywhere else because of his heart or for any other reason. Ex. 1 at 18, 77.

23. Plaintiff was continuously deemed overweight and told he should lose weight by his primary care physician from 1997 up until and subsequent to Plaintiff's heart attack of 11/01. Ex. 1 at 67; Ex. 9 – Medical records reflecting obesity.

### IV. THE INCIDENT

24. Plaintiff's medical records, produced by his attorney, indicate that Plaintiff was awakened around midnight, early in the morning of November 3, 2001, due to chest pains that he

rated a 6 on a scale of 1 to 10, with 10 being the highest degree of pain. The pain persisted all night and he was unable to return to sleep. Ex. 10, 11/01 Medicals; Ex. 1 at 16.

25. Plaintiff informed his supervisor after he had a heart attack on November 3, 2001 that he had chest pain the night before the incident. Ex. 11, Amtrak Injury Report; Ex. 1 at 13-14.

26. Nonetheless, on the morning of November 3, 2001, Plaintiff did not call a doctor or come to a medical facility, but went to work as a red cap at South Station in Boston, MA. Ex. 10, 11/3/01 progress notes; Ex. 1 at 19.

27. While at work at approximately 9:15 a.m. on November 3, 2001, a passenger sought Plaintiff's help in getting his bags to a train that was leaving shortly. Plaintiff placed the bags, each of which weighed more than 100 pounds, onto a cart and hurried to the platform with the passenger. Plaintiff then lifted both bags onto the train. Ex. 1 at 9-10; 21.

28. Plaintiff claimed that he ran from time to time to ensure that passengers made it onto their trains. Ex. 1 at 63.

29. Plaintiff began sweating profusely, sat down inside the station in an office behind the information booth and developed severe chest pain. Shortly thereafter he was taken by ambulance to Mass. General Hospital ("MGH"). Ex. 1 at 9-10, 21.

30. Plaintiff was diagnosed as having a heart attack and an angioplasty was performed that day to open up blockages in the right side of his heart. Ex. 1 at 9-10, 21, 28-31. Ex. 10, 11/3/01 MGH reports on surgery, 11/9/01 MGH face sheet report.

31. Plaintiff's primary care physician and cardiologist stated that Plaintiff was "extremely

lucky and a more significant problem may develop." Ex. 10, 11/15/01 Dr. Berg report.

32. On January 3, 2002, Plaintiff's cardiologist indicated he should not return to work until February 15, 2002. Ex. 12, Dr. Berg memorandum.

33. On January 31, 2002, his doctor wrote that Plaintiff should be restricted to lifting no more than 25 pounds, that he could never return to a job where he could lift as much as 75 pounds, and that he cannot return to that kind of employment. Ex. 12 , 1/31/02 office notes of Dr. Berg; Ex. 1 at 32.

34. Plaintiff's primary care physician will not allow him to return to work as a red cap which does not offer light duty. Ex. 1 at 33.

35. Plaintiff applied for and was awarded a full Railroad Retirement disability due to his heart attack. Ex. 1 at 36-37.

36. Plaintiff has not returned to work at Amtrak or sought work anywhere else since November 3, 2001. Ex. 1 at 33, 36.

37. Plaintiff admits he is capable of doing light and sedentary work that does not require lifting more than 25 pounds. Ex. 1 at 75.

**V.   COMPLAINTS ABOUT AMTRAK'S FACILITIES AND SAFETY PRACTICES**

38. Plaintiff mentioned no defects or insufficiencies in the facilities where he worked for Amtrak which caused or contributed to his heart attack. Ex. 1 at 62-65; Ex. 13, Plaintiff's Answers to Interrogatory Nos. 5 and 6.

39. Plaintiff made no complaint in his deposition or his answers to interrogatories of any equipment defects which caused or contributed to his heart attack. Ex. 1; Ex. 13.

40. Plaintiff stated that the unsafe working conditions for him as a red cap at Amtrak consisted of: failure of Amtrak to implement a system to have customers weigh their

bags; failure to provide sufficient manpower to assist with lifting of heavy bags; and encouragement by supervisors for red caps to run to platforms and individually lift overweight bags to help customers make their trains. Ex. 1 at 62-63; Ex. 13 Answer Nos. 5, 7, and 8.

41. Plaintiff admits that he never complained about these concerns to any supervisors or to the Safety Committee. Ex. 1 at 63-64.

42. Plaintiff admits that none of his fellow red caps ever complained to him about safety concerns associated with their jobs. Ex. 1 at 64-65.

DEFENDANT,
National Railroad Passenger Corporation,
by its attorneys,

DATED: March 15, 2006

s/Stephen E. Hughes
John A. Kiernan, BBO #271020
Stephen E. Hughes, BBO #629644
Bonner Kiernan Trebach & Crociata, LLP
One Liberty Square - 6th Floor
Boston, MA 02109
(617) 426-3900

### CERTIFICATE OF SERVICE

I, Stephen E. Hughes, hereby certify that, on March 15, 2006, I served a copy of the foregoing document by sending same by first class mail, postage prepaid, to counsel for each other party as follows:

<u>Plaintiff's Counsel:</u>
Thomas J. Joyce, III, Esq.
Hannon & Joyce
The Public Ledger Building – Suite 1000
150 S. Independence Square West
Philadelphia, PA 19106

<u>Plaintiff's Local Counsel:</u>
Michael J. McDevitt, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Ave., Suite 345
Boston, MA 02210

                                             <u>s/Stephen E. Hughes</u>
                                             Stephen E. Hughes