UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT PELUSI,

       Plaintiff,                        Civil Action No. 04-12236-RGS

    v.

NATIONAL RAILROAD
PASSENGER CORP. (AMTRAK),

       Defendant.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S STATEMENT OF MATERIAL FACTS

      Plaintiff, Robert Pelusi, by and through his undersigned attorneys, hereby answers and disputes Defendant's Statement of Material Facts as follows:

1.     Admitted that Defendant, Amtrak, is a passenger railroad established by an Act of Congress.

2.     Admitted that Plaintiff is a former employee of Defendant.

3.     Admitted in part, Denied in part. Plaintiff hired on with Defendant in its commissary department, and testified in his deposition only that he believed the weight limit for what he was supposed to lift and carry in that job was 75 pounds. (Exhibit 1, Plaintiff's Deposition, pages 45-46)

4.     Admitted in part, Denied in part. Plaintiff became a baggage handler for Defendant, and he testified in his deposition only that he believed the weight limit for what he was supposed to lift and carry in that job was 75 pounds. (Exhibit 1, Plaintiff's Deposition, pages 48-51)

5.     Admitted in part, Denied in part. Plaintiff testified in his deposition only that he received training to operate a fork truck and how to unload bags from the train when he became a baggage handler, and that he was told he could go get someone to help if something was heavy. (Exhibit 1, Plaintiff's Deposition, pages 51-53)

6.     Admitted that Plaintiff testified in his deposition that he believed certain of his co-workers were older than him and/or had more years of experience.

7.      Denied.  Plaintiff did not testify that he occasionally transferred job assignments following his heart surgery in 2000.  Plaintiff testified that he returned to work as a baggage handler following said initial heart surgery.  Plaintiff testified in that he did not become a temporary red cap following his 2000 surgery until just a few months before the incident in November 2001, which forms the basis of this claim.  (Exhibit 1, Plaintiff's Deposition, pages 49-50)

8.      Admitted that Plaintiff testified in his deposition that he liked the red cap position.

9.      Denied.  Amtrak's lifting requirements for red caps were arguably not the same as those for baggage men.  Plaintiff testified in his deposition that he believed, when he took the position of temporary red cap, that the lifting requirements were the same.  However, at Plaintiff's deposition, Defense counsel produced a copy of Defendant's job description requiring red caps to lift and carry passenger bags from 50 to 200 pounds.  (Exhibit 1, Plaintiff's Deposition, pages 25-27 & 50-51; Exhibit 2, Amtrak's Qualifications for Red Caps)

10.     Admitted that Plaintiff testified in his deposition that he believed certain of his co-workers were older than him.

11.     Admitted that Plaintiff testified in his deposition that he believed five or six other red caps were on duty at the same shift as Plaintiff.

12.     Denied.  Plaintiff testified that in his position as red cap, he was instructed to take the customers' bags and get them on their trains on time, and that he did not recall anyone ever training him or telling him that red caps can or should wait for help if passengers have bags of excessive weight.  (Exhibit 1, Plaintiff's Deposition, pages 25, 53 & 62-63; Exhibit 2, Amtrak's Qualifications for Red Caps)

13.     Admitted that Plaintiff received a copy of Defendant's Standards of Excellence booklet in 1995 as part of his employment with Defendant.

14.     Denied.  Plaintiff testified that in his position as red cap, he often had to run to the trains with passengers, and that he was told to do the best you can to get passengers onboard in time, and you don't want to let them miss their trains.  (Exhibit 1, Plaintiff's Deposition, pages 25, 53 & 62-63)

15.     Denied.  Plaintiff testified that in his position as red cap, he was made to lift excessively heavy bags for passengers, and that he estimates the bags he carried for a certain passenger immediately prior to the incident in question weighed over 100 pounds apiece.  Plaintiff further testified that Defendant does not require passengers to weigh their baggage before the red caps handle it, and that there is no scale available.  (Exhibit 1, Plaintiff's Deposition, pages 21-22, 25 & 62)

16.     Denied.  Amtrak's lifting requirements for red caps were arguably not the same as those for baggage men.  Plaintiff testified in his deposition that he believed, when he took

the position of temporary red cap, that the lifting requirements were the same. However, at Plaintiff's deposition, Defense counsel produced a copy of Defendant's job description requiring red caps to lift and carry passenger bags from 50 to 200 pounds. (Exhibit 1, Plaintiff's Deposition, pages 25-27 & 50-51; Exhibit 2, Amtrak's Qualifications for Red Caps)

17.     Denied. Amtrak's lifting requirements for red caps were arguably not the same as those for baggage men. Plaintiff testified in his deposition that he believed, when he took the position of temporary red cap, that the lifting requirements were the same. However, at Plaintiff's deposition, Defense counsel produced a copy of Defendant's job description requiring red caps to lift and carry passenger bags from 50 to 200 pounds. (Exhibit 1, Plaintiff's Deposition, pages 25-27 & 50-51; Exhibit 2, Amtrak's Qualifications for Red Caps)

18.     Admitted that Plaintiff was hospitalized for heart surgery in 2000.

19.     Admitted that Plaintiff lost time from work following his heart surgery in 2000.

20.     Admitted in part, Denied in part. Admitted only that Plaintiff was ultimately released to return to his work at that time *as a baggage handler* without restrictions following his initial heart surgery in 2000. (emphasis added).

21.     Denied. Plaintiff testified that he returned to work as a baggage handler following his initial heart surgery in 2000 and worked in that position without difficulty. He became a temporary red cap in approximately August of 2001. (Exhibit 1, Plaintiff's Deposition, pages 18 & 49-50)

22.     Denied. Plaintiff testified that he returned to work as a baggage handler following his initial heart surgery in 2000 and worked in that position without difficulty. He became a temporary red cap in approximately August of 2001. (Exhibit 1, Plaintiff's Deposition, pages 18 & 49-50)

23.     Admitted that Plaintiff's physician deemed him overweight in certain medical records.

24.     Denied. Plaintiff testified that he recalled complaining of heartburn the evening before the incident in question, and that he believes he may have been able to get some sleep that night despite the discomfort, and that he currently does not recall telling physicians or anyone otherwise. (Exhibit 1, Plaintiff's Deposition, pages 11-16)

25.     Denied. Plaintiff testified that he recalled complaining of heartburn the evening before the incident in question, and that he believes he may have been able to get some sleep that night despite the discomfort, and that he currently does not recall telling physicians or anyone otherwise. (Exhibit 1, Plaintiff's Deposition, pages 11-16)

26.     Admitted in part, Denied in part.  Plaintiff testified that he recalled complaining of heartburn the evening before the incident in question, and that if he had believed he was having chest pain, he would have gone to the hospital rather than to work that day.  (Exhibit 1, Plaintiff's Deposition, pages 11-16)

27.     Admitted in part, Denied in part.  Plaintiff testified in his deposition that on the morning of the incident in question, he recalled a passenger arriving very late to catch his train.  Plaintiff stated that his bags were extremely heavy.  Plaintiff struggled to quickly lift and transport the passenger's bags down to the train by himself as there was no one nearby to help him, and there was no time to wait.  (Exhibit 1, Plaintiff's Deposition, pages 9 & 21-22)

28.     Admitted that Plaintiff testified that in his position as red cap, he often had to run to the trains with passengers, and that he was told to do the best you can to get passengers onboard in time, and you don't want to let them miss their trains.  (Exhibit 1, Plaintiff's Deposition, pages 25, 53 & 62-63)

29.     Admitted that Plaintiff testified that he was sweating, and that that he went to the supervisor's office for a drink of water, and that certain of his co-workers called 911.

30.     Admitted that Plaintiff suffered a heart attack and underwent angioplasty, which injury and resultant surgery forms the basis of this action.

31.     Admitted in part, Denied in part.  The referenced November 15, 2001 medical record of Dr. Berg properly reads, "I have explained to him that he is extremely lucky and that we may end up with a more significant problem."  (Exhibit 3, Records of Dr. Berg)

32.     Admitted that on or about January 3, 2002, Dr. Berg noted that Plaintiff should remain out of work through at least 2/15/02.

33.     Admitted that on or about January 31, 2002, Dr. Berg noted that Plaintiff's weight restriction is 25 pounds lifting, that Plaintiff is not allowed to go back to a job where he can lift 75 pounds, and that Plaintiff cannot return to his employment.

34.     Admitted in part, Denied in part.  On or about January 31, 2002, Dr. Berg noted that Plaintiff's weight restriction is 25 pounds lifting, and that Plaintiff cannot return to his employment.  (Exhibit 3, Records of Dr. Berg)

35.     Admitted that Plaintiff has been awarded a disability retirement by the Railroad Retirement Board.

36.     Admitted that Plaintiff has not worked since the incident which forms the basis of this action.  Plaintiff has been awarded a disability retirement by the Railroad Retirement Board.  In a narrative report dated March 8, 2006, Dr. Berg reiterated that Plaintiff is disabled from performing heavy physical labor.  (Exhibit 3, Records of Dr. Berg)

37.     Admitted in part, Denied in part.  Plaintiff explained in his deposition that although he believes he may be capable of performing work which does not exceed his weight restriction of 25 pounds lifting, he was awarded a disability retirement by the Railroad Retirement Board.  (Exhibit 1, Plaintiff's Deposition, pages 74-75)

38.     Denied.  Plaintiff testified that in his position as red cap, he was instructed to take the customers' bags and get them on their trains on time, and that he did not recall anyone ever training him or telling him that red caps can or should wait for help if passengers have bags of excessive weight.  Plaintiff further testified that in his position as red cap, he often had to run to the trains with passengers, and that he was told to do the best you can to get passengers onboard in time, and you don't want to let them miss their trains.  Plaintiff further testified that in his position as red cap, he was made to lift excessively heavy bags for passengers, and that he estimates the bags he carried for a certain passenger immediately prior to the incident in question weighed over 100 pounds apiece.  Plaintiff further testified that Defendant does not require passengers to weigh their baggage before the red caps handle it, and that there is no scale available.  (Exhibit 1, Plaintiff's Deposition, pages 21-22, 25, 53 & 62-63; Exhibit 2, Amtrak's Qualifications for Red Caps)

39.     Denied.  Plaintiff testified that in his position as red cap, he was instructed to take the customers' bags and get them on their trains on time, and that he did not recall anyone ever training him or telling him that red caps can or should wait for help if passengers have bags of excessive weight.  Plaintiff further testified that in his position as red cap, he often had to run to the trains with passengers, and that he was told to do the best you can to get passengers onboard in time, and you don't want to let them miss their trains.  Plaintiff further testified that in his position as red cap, he was made to lift excessively heavy bags for passengers, and that he estimates the bags he carried for a certain passenger immediately prior to the incident in question weighed over 100 pounds apiece.  Plaintiff further testified that Defendant does not require passengers to weigh their baggage before the red caps handle it, and that there is no scale available.  (Exhibit 1, Plaintiff's Deposition, pages 21-22, 25, 53 & 62-63; Exhibit 2, Amtrak's Qualifications for Red Caps)

40.     Admitted in part, Denied in part.  Plaintiff testified as to unsafe working conditions, which included, *but were not limited to*, the following:  Plaintiff testified that in his position as red cap, he was instructed to take the customers' bags and get them on their trains on time, and that he did not recall anyone ever training him or telling him that red caps can or should wait for help if passengers have bags of excessive weight.  Plaintiff further testified that in his position as red cap, he often had to run to the trains with passengers, and that he was told to do the best you can to get passengers onboard in time, and you don't want to let them miss their trains.  Plaintiff further testified that in his position as red cap, he was made to lift excessively heavy bags for passengers, and that he estimates the bags he carried for a certain passenger immediately prior to the incident in question weighed over 100 pounds apiece.  Plaintiff further testified that Defendant does not require passengers to weigh their baggage before the red caps handle it, and that

there is no scale available. (Exhibit 1, Plaintiff's Deposition, pages 21-22, 25, 53 & 62-63; Exhibit 2, Amtrak's Qualifications for Red Caps)

41. Admitted in part, Denied in part. Plaintiff testified in his deposition only that he was presently unable to recall complaining about his working conditions as a red cap. (Exhibit 1, Plaintiff's Deposition, pages 63-65)

42. Admitted in part, Denied in part. Plaintiff testified in his deposition only that he was presently unable to recall his co-workers complaining about their working conditions as red caps. (Exhibit 1, Plaintiff's Deposition, pages 63-65)

By way of further response, Plaintiff, Robert Pelusi, incorporates herein by reference Plaintiff's Response with Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. Plaintiff respectfully requests oral argument.

WHEREFORE, Plaintiff, Robert Pelusi, respectfully requests this Honorable Court to enter an Order denying Defendant's Motion for Summary Judgment.

Respectfully submitted,
Plaintiff,
Robert Pelusi
By his counsel

 /s/ Thomas J. Joyce, III
THOMAS J. JOYCE, III, ESQUIRE
Hannon & Joyce
900 Centerton Road
Mount Laurel, NJ 08054
(856) 914-0220
tjoyce@hannonandjoyce.com


/s/ Michael J. McDevitt
MICHAEL J. McDEVITT, ESQUIRE
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02110
(617) 439-4990
mmcdevitt@lawson-weitzen.com


DATED: March 29, 2006