UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT PELUSI <br> Plaintiff, <br><br> v. <br><br> NATIONAL RAILROAD <br> PASSENGER CORPORATION <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 04 12236 RGS <br> ) <br> ) <br> ) <br> ) <br> ) |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
NATIONAL RAILROAD PASSENGER CORPORATION'S
MOTION FOR SUMMARY JUDGMENT

This Reply is intended merely to supplement the principal arguments set forth in Defendant National Railroad Passenger Corporations' ("Amtrak") Motion for Summary Judgment by briefly addressing several issues raised in Plaintiff's Opposition documents.

Plaintiff Robert Pelusi ("Plaintiff") opposes Amtrak's Motion essentially by arguing that there are genuine issues of material fact as to: (1) breach of duty of care (whether Amtrak failed to provide a safe workplace); (2) causation (whether the lifting of baggage caused his heart attack); and (3) foreseeability (whether his heart attack should have been foreseen by Amtrak). Amtrak has not attempted to argue in its Motion that Plaintiff cannot prove causation and will not do so here.[1] However, if Amtrak succeeds in showing *either* that Plaintiff cannot prove Amtrak failed to provide him with a safe work place, *or* that his heart attack was foreseeable, summary judgment must be granted.

---

[1] Amtrak has not made this argument in its Motion, but reserves its right to dispute causation should this matter go to trial.

Recognizing the tenuous state of his case, Plaintiff has attempted to fabricate at least two factual disputes that pertain to the breach of duty of care and foreseeability issues. In one, he tries to show that the lifting requirements for red caps were so extreme that he was subjected to an unsafe workplace and that Amtrak should have foreseen the likelihood of his heart attack. On the other, Plaintiff tries to undermine Amtrak's reliance upon his doctor's note permitting him to return to work *without restriction*, by pretending that his doctor's authorization was only for a return as a baggage handler, not a red cap. These alleged factual disputes are not supported by the record and cannot be relied upon to defeat Amtrak's motion for summary judgment.

I.  **THE LIFTING REQUIREMENTS OF THE RED CAP POSITION DO NOT RAISE GENUINE ISSUES OF DISPUTED MATERIAL FACT**

In Plaintiff's Opposition documents he points to a job description for red caps to suggest that he may have been improperly required to lift up to 200 pounds. Yet during his deposition, he states affirmatively that the lifting requirements for both the red cap and baggage handler positions were only 75 pounds:

> Question:  "And how did the lifting requirements differ for a baggage handler and a red cap?"
> Answer:  "They were the same. Supposed to lift up to 75 pounds."

Ex. 1 at 50-51.

It is true that during the deposition, Amtrak's counsel showed Plaintiff what turned out to be an outdated job description for red caps, dated 1992, indicating red caps must lift and carry passenger bags from 50 to 200 pounds. Ex. 1 at 27. Yet, on the same page of his deposition, Plaintiff adamantly denied this requirement:

> "No I haven't seen this one....No person – I couldn't lift 200 pounds if I wanted to....That's untrue, the part about the weight is not true to what I saw."

2

Subsequently Amtrak located the appropriate job description that pertained to the time frame during which Plaintiff worked as a baggage handler and red cap. That job description, dated November 2000, was included as Exhibit 6 to Amtrak's Motion for Summary Judgment. It confirms Plaintiff's testimony that red caps "must carry and lift 50-75 pounds frequently" and do not perform more strenuous lifting than baggage handlers. Ex. 1 at 50-51.

Hence, the old job description pointed to by Plaintiff in his Opposition documents cannot be the basis of a claim for an unsafe work place.

Moreover, the fact that the lifting requirements were the same for both positions when Plaintiff was a baggage handler and red cap, shows that there was no reason for Amtrak to foresee that permitting Plaintiff to work as a red cap would jeopardize his health. This is particularly evident when one considers that Plaintiff, who knew his heart condition better than anyone at Amtrak, preferred being a red cap and chose to bid onto the job of his *own volition*. No one at Amtrak ordered or even encouraged Plaintiff to bid onto the red cap position. Since Plaintiff foresaw no health ramifications of the decision, Amtrak could not be expected to foresee what his own doctor and he did not. That is not negligence, not even under FELA.

## II. THE RECORD REGARDING WHEN PLAINTIFF BECAME A RED CAP DOES NOT CREATE GENUINE ISSUES OF DISPUTED MATERIAL FACT

In paragraph 7 of Amtrak's Statement of Undisputed Material Facts, after describing Plaintiff's work as a baggage handler, Amtrak states that "[o]ver the next several years, Plaintiff occasionally transferred his job assignment to work as a red cap...." Plaintiff denied this in his Response and Opposition by emphasizing that he had never worked as a red cap before the fall of 2001, a couple of months before the heart attack that is the basis for this civil litigation. See Plaintiff's Response ¶7.

However, on page 79 of Plaintiff's deposition, the following exchange took place:

> Question: "When you started – you were a red cap for three months?"
> Answer: "At this particular time, yeah; but prior to that, I would – on and off, I would bid a job, like I said, go for temp, just for a change."

Based upon the above clarification of the record, there can be no doubt that Plaintiff had successfully bid for red cap positions and worked temporarily for periods of time as a red cap prior to the fall of 2001. He also admits that he testified that he preferred the red cap position to that of baggage handler.

It appears that Plaintiff is presenting this misinformation about his red cap work history in order to make the disingenuous argument he and his doctor were ignorant of lifting requirements for red caps that could affect his heart condition, but that Amtrak was fully cognizant of the alleged differences and health hazards. However, the facts in the record cannot support such a theory, because, as shown above, the lifting requirements were the same for red caps and baggage handlers. Furthermore, Plaintiff was fully aware of the requirements of the red cap position before he worked it in the fall of 2001 because he had seen the job description and had worked the job previously. He knew exactly what it entailed and *preferred* to work as a red cap even after he had done it for a few months. Hence, there can be no argument that Amtrak should have foreseen what Plaintiff and his doctor could not, i.e. that his health would be jeopardized by working as a red cap.

In conclusion, on the above-mentioned issues, Plaintiff has failed to raise genuine issues of disputed material fact concerning the safety of the Amtrak work environment or whether Amtrak should have foreseen his heart attack.

DEFENDANT,
National Railroad Passenger Corporation,
by its attorneys,

DATED: April 6, 2006

s/Stephen E. Hughes
John A. Kiernan, BBO #271020
Stephen E. Hughes, BBO #629644
Bonner Kiernan Trebach & Crociata, LLP
One Liberty Square - 6th Floor
Boston, MA 02109
(617) 426-3900

## CERTIFICATE OF SERVICE

I, Stephen E. Hughes, hereby certify that, on April 6, 2006, I served a copy of the foregoing document by sending same by first class mail, postage prepaid, to counsel for each other party as follows:

<u>Plaintiff's Counsel:</u>
Thomas J. Joyce, III, Esq.
Hannon & Joyce
The Public Ledger Building – Suite 1000
150 S. Independence Square West
Philadelphia, PA 19106

<u>Plaintiff's Local Counsel:</u>
Michael J. McDevitt, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Ave., Suite 345
Boston, MA 02210

s/Stephen E. Hughes
Stephen E. Hughes