**CLOSING INSTRUCTIONS**

ROBERT PELUSI

v.

NATIONAL RAILROAD PASSENGER CORP.

CIVIL ACTION NO. 04-12236-RGS

February 8, 2007

Members of the jury:

Now that the closing arguments of the lawyers have been presented, the time has come for me to instruct you on the law. My instructions will be in four parts: first, some instructions on the general rules that define and control the duties of a jury in a civil case; second, some instructions that you may find of use in evaluating the evidence that has been presented; third, I will explain the rules of law that you must apply to the facts as you find them, and finally I have some brief guidelines that will govern the conduct of your deliberations.

In defining the duties of the jury, let me first give you a few general rules.

It is your duty to find the facts from all of the evidence in the case. To the facts as you find them you must apply the law as I explain it to you. And you must follow the law as I describe it, whether you personally agree with the wisdom of the law or not. You must do your duty as jurors regardless of any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you and according to the law.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. And you must not read into these instructions, or into anything that I may have said or done during the course of the trial, any suggestion from me as to the verdict you should return. Whatever opinion I might have as to what your verdict should be is utterly irrelevant. The verdict is yours alone, as the finders of fact, to render. While I intend to be as helpful as I can in providing you with the knowledge of

the law that you will require to render an intelligent verdict, you will, when I am finished, be surprised – even astonished – at the extent to which the law commits this case to your sole determination as the judges of the facts.

Plaintiff, you will recall, is the name we give to the person who brings a lawsuit. We refer to the person sued as the defendant. As I explained during the empanelment, in a civil case, a party to a lawsuit, either a plaintiff or a defendant, may be a legal entity like a corporation. In the civil law, a legal entity has the same rights and responsibilities as a natural person and is entitled to the same fair and impartial consideration.

A legal entity such as a corporation can only act through its agents and employees. As a result, the law holds a corporate employer responsible for the acts or omissions of its employees, if such acts or omissions occur while the employee is acting within the regular scope of his or her employment. In applying this rule of law, if you find that an agent or employee of Amtrak acted negligently, and that the employee's negligence contributed to Mr. Pelusi's heart attack, then you will find that Amtrak, as the employer, bears the responsibility for that negligence.

In a civil trial, a plaintiff bears the burden of proving his case by a preponderance of the evidence. This means that the plaintiff must produce evidence which, when considered in the light of all of the evidence in the case, leads you to believe that his claims are more likely true than not. If he fails to meet this burden, your verdict must be for the defendant.

Let me briefly review with you what is and is not evidence in a civil case.

Evidence is typically presented at a trial in one of three ways.

First, through the sworn testimony of witnesses, both on direct and cross-examination.

Second, through physical objects, like documents and photographs, that are identified by a witness, and admitted as exhibits during the trial.

Third, by stipulation, or agreement between the parties that certain facts are true and need not be independently proven as such at trial. An example is the agreement of the parties that Amtrak fully meets the statutory definition of a common carrier engaged in interstate commerce.

Certain things are not evidence and should have no influence on your verdict.

1. Arguments and statements by lawyers, as I have cautioned several times, are not evidence. What the lawyers have said over the course of the trial you may find helpful, even persuasive, in reaching a judgment, but the facts are to be determined from your own evaluation of the testimony of the witnesses, the exhibits, and any reasonable inferences that you choose to draw from the facts as you find them.

2. Questions to the witnesses are not evidence. They can only be considered in the sense that they give context or meaning to a witness's answer.

3. Objections to questions are not evidence. Attorneys, as I explained, have a duty to their clients to object when they believe that a question is improper under the rules of evidence. You should not be influenced by the fact that an objection was made or by the way I ruled on it. If I sustained the objection, you should ignore the lawyer's question, and any assertion of fact it might have contained. If I overruled the objection, you should treat the witness's answer like any other.

4. Testimony that I excluded, struck, or that I instructed you to disregard is not evidence. You should also, as I have cautioned, ignore editorial comments made by the attorneys during their presentations, particularly those intended to characterize the testimony of witnesses. Whether or not a witness's testimony was believable on any particular point is a determination that only you can make.

5. Notes, if you have kept them, and most of you have, are not evidence. They are a personal memory aid to be used to refresh your recollection of the evidence during the deliberations.

6. Finally, anything you may have seen or heard outside the courtroom during the course of the trial is not evidence. You must decide the case based solely on the evidence offered and received during the trial.

Regardless of the way in which evidence is presented, it comes in one of two forms, as either direct or circumstantial evidence. Direct evidence is direct proof of a fact, usually presented through the testimony of a person who claims to have been an eyewitness to an event or a participant in a conversation. When you evaluate direct testimony your decision is fairly straightforward. Do you believe that what the witness has told you is accurate? Circumstantial evidence, on the other hand, is the proof of a chain of circumstances, or a set of facts, from which you could infer or conclude that another fact is true, even though you have no direct evidence of that fact.

For instance, if you were to awake in the morning and, even though the day was bright and clear, see puddles of water on the street, you might draw the inference that it had rained during the night even though your sleep had been uninterrupted. In other words, the fact of rain is an inference that could be drawn from the presence of water on the street. An inference may be drawn, however, only if it is reasonable and logical, and not if it is speculative or based on conjecture. If for example, you observed puddles of water on your street, but not on any other street in your neighborhood, other facts, like a broken water main, or if you live in the suburbs, a neighbor's malfunctioning sprinkler system, might explain the presence of water. In deciding whether to draw an inference, you must look at and consider all of the facts in the case in the light of reason, common sense, and your own life experience.

Neither type of evidence, direct or circumstantial, is considered superior or inferior to the other. Either or both types of evidence may be considered in reaching your verdict and may be given whatever weight you as the finders of fact deem the evidence to be worth.

Most evidence received at trial is offered through the testimony of witnesses. As the jury, you are the sole judges of the credibility of these witnesses. If there are inconsistencies in the testimony, it is your function to resolve any conflicts, and decide where the truth lies.

You may choose to believe everything that a witness said, or only part of it, or none of it. If you do not believe a witness's testimony that something happened, that of course is not evidence that it did not happen. It simply means that you must put aside that testimony and look elsewhere for credible evidence before deciding where the truth lies.

Often it may not be so much what a witness says, but how he or she says it that might give you a clue whether or not to accept his version of an event as believable. You may consider a witness's character, his or her appearance and demeanor on the witness stand, his or her frankness or lack of frankness in testifying, whether the witness was contradicted by anything that he or she said before the trial, and whether his or her testimony is reasonable or unreasonable, probable or improbable in light of all the other evidence in the case. You may take into account how good an opportunity the witness had to observe the facts about which he or she testifies, the degree of intelligence the witness shows, and whether his or her memory seems accurate. You may also consider the witness's motive for testifying, whether he or she displays any bias in doing so, and whether he or she has any interest in the outcome of the case. Now simply because a witness has an interest in the outcome of the case does not mean that the witness is not trying to tell you the truth as he or she recalls it or believes it to have been. But a witness's interest in the case is a factor that you may consider along with everything else. You may also consider the fact that a witness may be perfectly sincere in his or her account of an event and simply be mistaken as to the truth.

As a rule a witness is not permitted to offer an opinion about the facts to which he or she testifies. An exception is made for witnesses like Dr. Berg who are asked to testify as experts.

Experts are witnesses, who by education or experience, have acquired specialized knowledge in some art, science, profession, or calling. These witnesses are permitted to give opinions about matters falling within their particular expertise, and may also give reasons for their opinions. This type of testimony is allowed in the belief that the knowledge of certain experts is so specialized that the facts which they have mastered are beyond the collective knowledge of the court and the jury.

The credibility of the testimony of an expert witness is judged like that of any other witness. Simply because the law allows a witness to give an opinion does not mean that you must accept that opinion. If you decide that the opinion offered by an expert witness is not based on sufficient education or experience, or if you conclude that the reasons given for the opinion are not convincing or are outweighed by other evidence in the case, including the testimony of other expert witnesses, you may disregard the opinion entirely.

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things, or get confused, or remember an event differently. Memory is not always reliable, and when someone recounts a story twice, it will seldom be identical in every detail, unless it is a memorized lie or the witness is possessed of extraordinary perception and recall. It is for you to decide whether any contradictions in a witness's testimony are innocent lapses of memory or intentional falsehoods. That may depend on whether important facts or small details are at issue, and how important the facts might have appeared to the witness at the time they were perceived.

Let me turn now to the legal standards that you will apply to the facts as you find them.

## FEDERAL EMPLOYERS' LIABILITY ACT

Mr. Pelusi seeks damages stemming from a heart attack that he suffered on November 3, 2001, which he alleges was caused or aggravated by the negligence of his employer, the National Railroad Passenger Corporation, or Amtrak, in failing to provide him with a safe working environment. His claim is made under a federal statute called the Federal Employers' Liability Act or FELA.

FELA provides in part that:

> [e]very common carrier by railroad while engaging in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

There is no dispute that, at all relevant times, Amtrak was a common carrier engaged in interstate commerce, and that Mr. Pelusi was an Amtrak employee.

## ESSENTIAL ELEMENTS

To recover damages under FELA, Mr. Pelusi must prove two things by a preponderance of the evidence. First, that Amtrak was negligent; and second, that its negligence was a cause of his injury.

## NEGLIGENCE

What do we mean by negligence? An act or failure to act is negligent if it exposes another person to an unreasonable risk of harm. Negligence is doing something that a reasonably prudent person would not do, or failing to do something that a reasonable prudent person would do, in similar circumstances. Stated another way, negligence is the failure to exercise the degree of care, diligence and safety that a reasonable person would use in a similar situation.

As members of a civilized society, we are expected to observe certain norms of behavior. Among these is an appreciation for the safety of others who might be placed at risk by our conduct. This is what we mean by a duty of care. The law does not make us

each an insurer responsible for the consequences of every accident that might befall our fellow human beings, but it does expect us to act reasonably in reducing the risks that our behavior might create for others. Depending on the activity we undertake, the duty of care takes on different dimensions. For example, a person who operates a motor vehicle owes an ordinary duty of care at all times to avoid placing other motorists or pedestrians in danger. A railroad owes a duty of ordinary care to its employees to provide and maintain a reasonably safe working environment adapted appropriately to the types of tasks that it requires its employees to perform. This is the duty of care that Mr. Pelusi alleges that Amtrak breached.

The standard of care in this case is to a large degree defined by the FELA. The Act imposes on a railroad the obligation to use all reasonable efforts to furnish its employees with a safe place to work. A railroad cannot delegate this obligation to third parties or expect employees, because of the hazardous nature of their work, to assume the risk that they might be injured. A railroad has an affirmative duty to its employees to make and enforce safety rules to minimize the possibility of accident or injury. The failure of a railroad to issue and enforce appropriate safety rules may be considered as evidence of negligence, as may be the failure of an employee to abide by and follow the safety rules that the railroad has put in place. The employer's duty, however, is not that of an insurer. A railroad is not expected to, nor could it provide, a workplace that is totally safe, only one that is reasonably safe considering the conditions in which a railroad must conduct its business. What a reasonable railroad would or should have done to insure worker safety under the circumstances of this case is an issue that you must decide. Once you have determined what a reasonable railroad would have done to insure the safety of its red caps, you must compare that standard to what Amtrak actually did in determining whether Amtrak was in fact negligent.

The mere fact that Mr. Pelusi suffered a heart attack does not establish a breach of the duty of care or give rise to any inference of negligence on Amtrak's part. Mr. Pelusi's claim is not that Amtrak owed him a special duty of care. Indeed, there is no evidence, nor does Mr. Pelusi claim that there is, that Amtrak knew or should have known that he was a candidate for a heart attack. Rather, Mr. Pelusi alleges that Amtrak negligently failed to provide him and other red caps with safe working conditions thereby inviting injuries like those that he incurred. If you find that Mr. Pelusi has proved by a preponderance of the evidence that Amtrak breached its duty of maintaining a reasonably safe work place, you will then turn to the second element of Mr. Pelusi's case, that of causation.

LEGAL CAUSE

For purposes of the Federal Employers' Liability Act, a railroad's negligent conduct is the legal cause of harm to an employee if its conduct is a factor in causing that harm. If you should find that Mr. Pelusi has proven, by a preponderance of the evidence, that Amtrak was negligent, and that its negligence was a cause, no matter how small, in bringing about or aggravating his heart attack, then you should consider the question of damages. If, however, you determine that Mr. Pelusi has not proven either of the first two elements of his case – negligence and causation – by a preponderance of the evidence, then you will return a verdict for Amtrak.

DAMAGES

The third element Mr. Pelusi must prove is damages. You will reach this issue only if you find that Amtrak was negligent and that its negligence contributed in some way to Mr. Pelusi's injuries. For convenience, I am going to describe the law of damages to you now. In so doing, I am not attempting in any way to suggest to you what your verdict should be. But it is easier that I explain the principles involved in damages as part of these instructions, rather than interrupt your deliberations later, should it become necessary, with a second set of instructions on the issue.

The purpose of the law in awarding damages is to compensate an injured person for losses incurred because of another's negligent conduct. The object, as best as money can accomplish it, is to restore the injured person to the position he would have been in had the injury not occurred. The purpose is not to reward the plaintiff or to punish the defendant. The law does not punish anyone because of an accident, nor does the law compensate where a defendant has done no wrong, no matter how severely a plaintiff is injured.

There is no special formula for assessing damages. It is your obligation to determine what is fair, adequate and just. You must be guided by your common sense and your conscience in translating into dollars and cents that amount which will fairly and reasonably compensate Mr. Pelusi.

In determining the amount of damages Mr. Pelusi is entitled to recover, there are certain areas you should take into consideration. The first area is pain and suffering, both physical and mental. You may take into account any physical pain suffered by Mr. Pelusi from the date of the heart attack and any future pain that you find to be medically probable. A plaintiff who has a pre-existing condition at the time of an accident is not entitled to recover damages for any continuing pain or disability that is solely attributable to that condition. But the defendant must take the plaintiff as it finds him. The defendant consequently is responsible for any additional injury its negligence causes and for any aggravation of a plaintiff's pre-existing condition. You may also compensate Mr. Pelusi for any loss of the ordinary pleasures of life that you find he has suffered as a result of Amtrak's negligence, and for any permanent disability or disablement that you find that Mr. Pelusi has incurred because of Amtrak's negligence.

A second area of damages that may be considered is any loss of past and future earnings. In calculating the loss of earnings, you must remember that an employee in Mr. Pelusi's situation is under a legal duty to mitigate his damages by making reasonable

efforts to resume gainful employment as soon as he is physically able to do so. If you find by a preponderance of the evidence that Mr. Pelusi could have found work that accommodated his injuries, then you should deduct what you believe that he could have earned from the sum he would have earned had he continued his employment as a red cap. The same duty to mitigate damages applies to any potential loss of future earnings. A plaintiff, even one who has suffered a permanent disability, has a legal obligation to seek such gainful employment as he is reasonably able to perform. Once you have calculated each of these areas of damages, pain and suffering, loss of life's pleasures, lost wages and permanent disability, you should add up these damages to arrive at a total award. In making of any award of lost future earnings, you must take care to reduce the award to its present cash value, as a dollar awarded today to be spent at some point in the future will earn interest in the interval. To reduce an award of future damages to present value, we apply what is called a discount rate. A discount rate is the margin, based on your best estimate, by which the interest rate on a risk-free investment like a Treasury security will over time exceed the rate of inflation.

It is important that the total sum awarded not exceed fair compensation for the entire injury. It is also important that any award reflect the fact that this is the only opportunity Mr. Pelusi will ever have to be compensated for any injuries he may have suffered because of Amtrak's conduct. Any award that you give is not subject to state or federal taxes and therefore you should not consider tax consequences in calculating an award. Interest on a judgment is also a matter of law determined by the court and should not be factored into an award.

## CONTRIBUTORY NEGLIGENCE

There is a final principle that you should consider called contributory negligence. If you decide that both Mr. Pelusi and Amtrak were in some measure at fault, this rule of law requires you to compare the negligence of the defendant with that of the plaintiff.

On this issue, which is part of the defendant's case, the burden shifts to Amtrak to prove by a preponderance of the evidence that Mr. Pelusi was negligent and that his negligence was a contributing cause of his injuries. In other words, the defendant has the burden of proving that the plaintiff's own failure to use reasonable care contributed to bringing about his injuries. The plaintiff had a duty to use the same degree of care in his own actions that a reasonable red cap would have used in similar circumstances. In assessing whether Mr. Pelusi was negligent, you may, among other things, compare his actions with the requirements of Amtrak's safety rules and regulations.

If you decide that it is more probable than not that Mr. Pelusi was also negligent and that his negligence was a contributing cause of his injuries, then you must decide what percentage of his damages were caused by Amtrak's negligence and what percentage of the damages were caused by Mr. Pelusi's own negligence. These percentages must equal one hundred percent.

If you attribute any negligence to Mr. Pelusi, the total award that you make will be reduced by that percentage. If you find that Mr. Pelusi was not negligent, then obviously there will be no reduction in the total award. Similarly, if you find that his negligence was the sole cause of his injuries, then you will not even reach this question as you will have found for Amtrak on the affirmative part of Mr. Pelusi's case. If you do apportion negligence between the plaintiff and defendant, do not attempt to factor the reduction in plaintiff's damages into any total sum that you award. That calculation will be done by the court.

## **DELIBERATIONS**

Finally, let me say a few words about your deliberations.

Each of you must decide the case for yourself, but you should do so only after considering all of the evidence, after discussing it fully with the other jurors, and after listening to the views of your fellow jurors. Do not be afraid to change your opinion if, after

hearing the opinions of your fellow jurors, you are convinced that your initial conclusion was wrong. But do not come to a decision simply because other jurors insist that it is right, nor surrender an honest belief about the weight and effect of the evidence simply to reach a verdict.

Although the trial has been short, this case has taken time and effort on the part of the attorneys involved. There is no reason to think that the case could have been better tried or that another jury would be better qualified to decide it. It is important therefore that you reach a verdict if you can do so conscientiously. Your verdict must be unanimous as to each of the special questions I am going to ask you to answer. Your answers will be recorded on the verdict slip by the juror I appoint as your foreperson.

[APPOINT FOREPERSON]. As foreperson, you will have the same voice and the same vote as the other deliberating jurors. You will act as the moderator of the discussion and will serve as the jury's spokesperson. Your most important obligation is to insure that any juror who wishes to be heard on any material issue has a full and fair opportunity to be heard by his or her fellow jurors. When the jury has reached a verdict, you will fill in the appropriate answers, sign and date the verdict slip, and inform the court officer that the jury is ready to return to the courtroom.

If it becomes necessary during your deliberations to communicate with me, you may do so by sending a note through the court clerk signed by your foreperson. No member of the jury should ever attempt to communicate with me except by such a signed writing.